# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS, INC. ) | |
| ) | |
| and ) | |
| ) | |
| BOOST WORLDWIDE, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| ) | **Jury Trial Demanded** |
| **GLOBAL BUSINESS DIMENSIONS INC.,** ) | |
| ) | |
| **MR. SANJAY PRASAD,** ) | |
| ) | |
| **JOHN DOES 1 THROUGH 10,** ) | |
| ) | |
| and ) | |
| ) | |
| **JOHN DOES 11 THROUGH 20,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs Sprint Communications, Inc. ("Sprint") and Boost Worldwide, Inc. ("Boost") (collectively "Plaintiffs"), by and through its attorneys, for its Complaint and Request for Injunctive Relief against Defendants Global Business Dimensions Inc. ("Global Business"), Sanjay Prasad ("Prasad"), John Does 1-10, and John Does 11-20 (collectively "Defendants") state as follows:

## INTRODUCTION AND BACKGROUND

1. Boost sells wireless handsets ("Boost Mobile phones" or "phones") for use on Sprint's wireless network at prices significantly lower than the price Boost pays the phones' manufacturers in order to make the phones more widely accessible to consumers. Boost recoups the money it loses on the phones through revenue earned on providing wireless services.

60955145.3

2.	Defendants take advantage of this "subsidy" by purchasing new Boost Mobile phones in bulk with the knowledge and intent that the phones will not be used on the Sprint wireless network (as required by Boost Mobile's Terms and Conditions); accessing Sprint's protected computer systems and wireless network to unlock these phones; and reselling these phones overseas where wireless phones are not subsidized and can be sold for significant profits.

3.	The purpose of "unlocking" the Boost Mobile phones is to disable software installed by the phones' manufacturers at Boost's request and expense, which requires the phones be activated exclusively on Sprint's wireless network. The purpose of the software is to allow Boost to offer the phones at a significant discount to the consumer while protecting Boost's subsidy investment. John Does 11-20 assist with the unlocking of these Boost Mobile phones.

4.	In an effort to prevent Defendants' scheme, Boost and their authorized dealers and retailers have implemented policies limiting the number of Boost Mobile phones an individual may purchase. Global Business and John Does 1-10 have taken steps, however, to circumvent these policies by, among other things, traveling to multiple locations to make multiple purchases of Boost Mobile phones and/or directing the purchase of others who circumvent these policies.

5.	Defendants' conduct is causing Plaintiffs significant financial losses and immediate and irreparable injury.

## THE PARTIES

6.	Plaintiff Sprint Communications, Inc. is a wholly owned subsidiary of Sprint Corporation, and is a Kansas corporation, with its principal place of business in Overland Park, Kansas.

7. Plaintiff Boost Worldwide, Inc. is a wholly owned subsidiary of Sprint Corporation, and is a Delaware corporation, with its principal place of business in Irvine, California.

8. Defendant Global Business Dimensions Incorporated is a New Jersey corporation with a primary place of business at 220 West Parkway, Unit #8, Pompton Plains, New Jersey, 07444.

9. Defendant Sanjay Prasad is an individual residing in Manwah, New Jersey who personally participated in the actions alleged herein.

10. Upon information and belief, John Doe Defendants 1 through 10 wrongfully participated and conspired to traffic Boost Mobile phones; including doing one or more of the following: aggregating these phones; making payments to Sprint employees to unlock these phones or unlocking these phones themselves; and reselling these phones overseas.

11. Upon information and belief, John Doe Defendants 11 through 20 wrongfully participated and conspired to traffic Boost Mobile phones; including doing one or more of the following: developing software to unlock these phones and unlocking these Boost Mobile phones as Sprint employees or as employees of Sprint's vendor call centers.

12. Plaintiffs will amend this Complaint to allege the John Doe Defendants' true names and capacities when ascertained. Plaintiffs will exercise due diligence to determine the John Doe Defendants' true names, capacities, and contact information to effect service.

13. Plaintiffs are informed and allege that each of the fictitiously named John Doe Defendant is responsible in some manner for the occurrences herein alleged and that Plaintiffs' injuries as herein alleged were proximately caused by such Defendants.

60955145.3

## JURISDICTION AND VENUE

14. This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 because of Plaintiffs' claims under 18 U.S.C. § 1030, *et seq.*, 17 U.S.C. § 1201, *et seq.*, and 28 U.S.C. § 1338 (a). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Global Business resides in this judicial district.

16. This Court has personal jurisdiction over the Defendants either by residence or because Defendants have conducted, engaged in, and carried out torts or other wrongful conduct within this judicial district that have resulted in damage within this judicial district thereby giving rise to personal jurisdiction under the Kansas Long Arm statute.

## PLAINTIFFS' BUSINESS MODEL

17. Boost provides a comprehensive range of prepaid telecommunications services to millions of customers nationwide.

18. Plaintiffs' telecommunications services enable Boost customers to choose from a variety of prepaid voice and data plans for use on cutting edge phones on Sprint's wireless network.

19. In addition to being available online, over the phone with authorized Boost customer service representatives, and in its stores, Boost Mobile phones and wireless services are also sold through authorized third-party retailers throughout the country.

20. Boost's business model is based upon its ability to deliver affordable and up to date phones to its customers. Boost sells phones at subsidized prices to its customers online at

boostmobile.com, through Boost dealers, or third-party authorized dealers. Boost sells the phones at these subsidized prices with the reasonable expectation that the price will induce consumers to establish accounts with Boost, purchase pay-as-you-go airtime and other services offered by Boost, and replenish their accounts on an ongoing basis.

21.   Boost Mobile phones are locked to the Sprint network to insure the device can only be used on the Sprint wireless network and cannot be activated on a competing carrier's network. An "unlocked" device is no longer locked to Sprint's wireless network and the user may attempt to activate it on another carrier's network.

### TERMS AND CONDITIONS REGARDING THE USE OF BOOST PHONES

22.   Boost Mobile phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the phones.

23.   The Terms and Conditions are listed on the outside of the Boost box in capital letters that state:

> YOU ARE PERMITTED TO USE THIS MOBILE PHONE AND THE SOFTWARE AND CONTENT ON IT EXCLUSIVELY WITH BOOST MOBILE SERVICE. COMMERCIAL RESALE PROHIBITED EXCEPT BY AUTHORIZED BOOST MOBILE DEALERS. YOU MAY NOT ALTER ANY OF THE HARDWARE OR SOFTWARE IN THIS PHONE OR EXPORT THIS PHONE FROM THE USA. BY PURCHASING THIS PHONE OR OPENING THIS PACKAGE, YOU AGREE WITH BOOST MOBILE TO ABIDE BY THESE TERMS.

24.   Boost's General Terms and Conditions of Service (effective April 15, 2017) are also listed on its website which state:

> If you get a Device from Boost authorized retailer without paying full price (MSRP) for the Device, you agree not to resell or trade in, or participate or profit in the resale or trade in, of the Device to a third party until you have met all your financial and contractual obligations to us. If you do this without meeting your obligations, we reserve the right to take any action we deem necessary, including charging you for the difference between the Device's full price and the price you paid for it, and seeking recovery of related damages. If you have a separate agreement with Boost to acquire, purchase, or lease a Device, any restrictions on

resale in that agreement will also apply, so please refer to the terms of any such agreement to understand your rights to resell your Device.

25. Therefore, the Terms and Conditions are intended to restrict the use of Boost Mobile prepaid phones to Sprint's wireless network and also strictly prohibit the resale, altering the hardware or software in the Boost Mobile phones, or from exporting the phones.

## PLAINTIFFS' TRADEMARK RIGHTS

26. Plaintiffs own or have been assigned federal trademark registrations for the standard character and stylized Boost trademark, depicted below:



27. Boost uses this trademark in connection with its telecommunications products and services and has a U.S. Reg. No. of 5184285.

28. This Boost trademark has become an intrinsic and essential part of the valuable goodwill and property of Plaintiffs, both which protect the Boost trademark. The trademark is well established and well known as a symbol identifying and distinguishing Boost's products and services, and signifying distinctive products and services. Only Boost and its expressly authorized, affiliated agents are permitted to use the trademark. The Boost trademark is protectable, valid, distinctive, has acquired secondary meaning, and is associated exclusively with Boost.

## DEFENDANTS' MISCONDUCT

29. Defendants and their co-conspirators are purchasing the Boost Mobile phones in bulk, unlocking the phones, and fraudulently reselling phones overseas for substantial profits where they can be used on other wireless carriers' networks.

30. Once a Boost Mobile phone is shipped overseas and becomes operable on other wireless networks, Plaintiffs no longer have a revenue source to recoup the subsidy on the Boost Mobile phone, causing Plaintiffs significant damages.

31. Global Business and, upon information and belief, John Does 1-10 purchase or arrange for the bulk purchase of Boost phones, aggregate them, and then ship them overseas where they cannot be used on Sprint's wireless network.

32. Upon information and belief, John Does 11-20 have developed software to unlock the phones or are Sprint employees or Sprint's vendor call center employees who are unlocking these phones for compensation.

33. In fact, a few months ago, Plaintiffs identified an entity from Dubai looking to purchase large quantities of Boost Mobile phones.

34. Plaintiffs then engaged private investigators who then spoke to an individual from this entity in Dubai was interested in buying prepaid wireless phones from the United States in quantities exceeding 1000 handsets per model, per week. Plaintiffs' investigators then offered to sell the Boost LG Tribute HD to him which he confirmed he would purchase.

35. Plaintiffs' investigators then followed up with him to inquire about his contacts in the United States. The investigators claimed they were more comfortable selling wireless phones to someone in the United States rather than shipping the phones directly to Dubai. He provided a business card of Defendant Sanjay Prasad, President of Global Business and stated that the investigators could deliver the phones to Global Business in New Jersey.

36. Recently, investigators traveled to Global Business's offices in Pompton Plains, New Jersey to learn more about the operations and sell Boost Mobile Samsung J3 phones. The investigators then met with Mr. Prasad and others from Global Business.

7

37. Mr. Prasad told the investigators that Global Business buys and sells a variety of electronic and consumer goods, including a significant number of phones that are all exported.

38. Mr. Prasad was interested in both Boost Mobile and Virgin Mobile phones and said he would take as many phones as the investigators could get and inquired whether they could unlock the phones.

39. The investigators then sold five Boost Samsung Galaxy J3 phones to Global Business, which requested a significant quantity of phones.

40. Following the meeting at Global Business, the investigators advised the entity in Dubai that they met with Global Business and delivered the phones. The Dubai outfit sought significant quantities and asked how soon the phones could be delivered.

41. Weeks later, the investigators advised Global Business that they had 100 Boost Mobile Samsung Galaxy J3 phones. Global Business arranged to take delivery two days later.

42. A few days later, Plaintiffs' investigators went to Global Business to deliver the 100 Boost Mobile phones. The investigators then invoiced Global Business for the phones and were paid by Global Business that same day.

43. The investigators maintained a list of the 105 International Mobile Equipment Identity ("IMEI") numbers that were sold to Global Business in order for Plaintiffs to later identify where the Boost Mobile phones were activated and when.

44. Following the transaction, Sprint's investigators contacted the Dubai operation and advised him the Boost Mobile phones were delivered. The Dubai operation confirmed it wanted to continue to purchase thousands of phones and that the phones would be unlocked to be resold.

45. Upon information and belief, these Boost Mobile phones were shipped by Global Business to Dubai, United Arab Emirates, in violation of Boost's Terms and Conditions.

46. Out of the 105 Boost Mobile phones sold to Global Business, Plaintiffs have since been advised that 15 of those phones have since been activated. Six of the Boost Mobile phones have been activated in Oman; four of the Boost Mobile phones have been activated in Pakistan; three of the Boost Mobile phones have been activated in the United Arab Emirates; one Boost Mobile phone was activated in India; and one Boost Mobile phone was activated in the United States.

47. Upon information and belief, these Boost Mobile phones were unlocked through John Does 11-20 and then resold through John Does 1-10, all in violation of Boost's Terms and Conditions.

48. Upon information and belief, Global Business has bought numerous other Boost Mobile phones and shipped them overseas, and has participated in unlocking or arrangement for unlocking the Boost Mobile phones, thereby depriving Plaintiffs of its subsidy investment as well as depriving Plaintiffs from having legit customers buy and actually use the phones on Sprint's wireless network.

49. Defendants' conduct has caused Plaintiffs to incur significant losses, including, but not limited to, investigation costs, the opportunity to recoup its subsidies on the sale of its Boost Mobile phones, loss of revenue from providing wireless service to legitimate Boost Mobile customers, and Plaintiffs' reputation and goodwill.

**COUNT I**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE**
**BUSINESS EXPECTANCY AGAINST ALL DEFENDANTS**

50. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

51. Boost offers it phones online, through its dealers, and through authorized third-party retailers to customers for use on Sprint's wireless network and, thus, an expectancy of a business relationship exists between Boost and prospective Boost customers.

52. When Boost offers its subsidized phones for sale, it expects that the buyers of the phones will use the phones on the Sprint wireless network.

53. John Does 1-10 who purchased the phones from Global Business and resold the unlocked Boost phones knew of this business expectancy between the Boost purchaser or downstream consumer and Boost.

54. John Does 11-20 who unlocked the phones and knew of this business expectancy between the Boost purchaser or downstream consumer and Boost.

55. Global Business and Prasad knew of this business expectancy between the Boost purchaser or downstream consumer and Boost.

56. Had the Boost mobile phone been purchased by a legitimate customer, Boost and Sprint had a reasonable expectation that the customer would have activated the phone on the Sprint wireless network thereby providing revenue to Boost and Sprint.

57. By purchasing the phones from Global Business for the purposes of unlocking and reselling the phones, John Does 1-10, with an improper means and for an improper purpose, Defendants caused a loss of Sprint and Boost's expectancy in future business with potential customers.

58. By unlocking the phones of customers who may have otherwise been ineligible to unlock those phones, John Does 11-20, with an improper means and for an improper purpose, caused a loss of Sprint and Boost's expectancy in future business with potential customers.

59. By purchasing and reselling Boost phones that they knew were not for commercial resale, by shipping the phones overseas, and that they knew would be unlocked,

10

Global Business and Prasad engaged in improper and intentional acts designed to cause a loss of Sprint and Boost's expectancy in future business with potential customers.

60. The Defendants' actions were intentional and their conduct proximately caused Boost and Sprint significant damages in an amount to be determined at trial.

## COUNT II
## BREACH OF THE DUTY OF LOYALTY [AGAINST JOHN DOES 11-20]

61. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

62. Upon information and belief, at all times relevant to this Complaint, John Does 11-20 were employees of Sprint.

63. As Sprint employees, John Does 11-20 had a duty of loyalty to Sprint.

64. By improperly using Sprint's property and confidential information for their own benefit and for the benefit of others, John Does 11-20 acted against the best interests of their employer, Sprint.

65. By failing to disclose the unlock scheme to Sprint and taking payment to unlock phones, John Does 11-20 acted against the best interests of their employer, Sprint.

66. Through their above-stated conduct, John Does 11-20 breached their duty of loyalty to Sprint and proximately caused Sprint damages in an amount to be determined at trial.

## COUNT III
## FRAUD AGAINST JOHN DOES 11-20

67. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

68. Upon information and belief, John Does 11-20 were employees of Sprint or employees of Sprint vendors.

69. For each phone unlocked, the John Doe 11-20 defendant represented to Sprint that the IMEI was eligible to be unlocked in accordance with Sprint's unlocking policy.

70. At the time the John Doe 11-20 defendant made the representation, the John Doe 11-20 defendant knew that such representation was false and that the phone was not eligible to be unlocked.

71. The representation was made with the intention for Sprint to rely on it and unlock the phone from Sprint's network.

72. Sprint reasonably relied upon the representation and actually allowed the phone to be unlocked.

73. Because of the false representation made by each John Doe 11-20 defendant, Sprint has been damaged in that the phone has been unlocked and not activated on the Sprint network thereby depriving Sprint the subsidy investment in the phone as well as the related service contract revenue for each phone.

## COUNT IV
## COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
## [AGAINST JOHN DOES 11-20]

74. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

75. All computers used by John Does 11-20 without authorization or in excess of their authorized access, or to access or traffic Plaintiffs' information, including, but not limited to, all servers, desktop computers, and laptop computers, were at all relevant times used in interstate commerce and are protected computers under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e).

    A.    **Violation of Section 1030(a)(4) of the CFAA**

76. John Does 11-20 knowingly, and with the intent to defraud, accessed Plaintiffs' protected computers without authorization or exceeded their authorized access and unlocked Boost Mobile phones on Sprint's wireless network without Plaintiffs' knowledge or consent.

77. John Does 11-20's conduct, which was intended to and actually did defraud Plaintiffs, exceeded their authorized access to Plaintiffs' protected computer systems, as defined by Section 1030(e)(6) of the CFAA.

78. As a result of their participation in the unlocking scheme, John Does 11-20 unlocked phones that were meant to be used exclusively on Sprint's wireless network, and received compensation for doing so, all of which are things of value.

79. Accordingly, the conduct of John Does 11-20 constitutes unauthorized access of Plaintiffs' protected computer systems in violation of Section 1030(a)(4) of the CFAA.

### B. **Violation of Section 1030(a)(5)(C) of the CFAA**

80. John Does 11-20 intentionally accessed Plaintiffs' protected computers without authorization or exceeded their authorized access and as a result of such conduct, unlocked Boost Mobile phones on Sprint's wireless network without Plaintiffs' knowledge or consent.

81. John Does 11-20 access to Plaintiffs' protected computers caused Plaintiffs to suffer damages and loss because they unlocked phones that were to be used on Sprint's wireless network and Plaintiffs could not recoup the subsidy for Boost Mobile phones.

82. Accordingly, John Does 11-20 conduct constitutes intentional access to a protected computer without authorization in violation of Section 1030(a)(5)(C) of the CFAA.

### C. **Facts Common to All CFAA Violations**

83. John Does 11-20 knowingly and intentionally conspired to commit the offenses detailed above.

13

84. John Does 11-20 activities substantially affect interstate commerce as Plaintiffs' computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

85. John Does 11-20 unauthorized access of Plaintiffs' protected computer systems has caused and will continue to cause Plaintiffs to suffer injury, with "damages" and "losses" as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), including but not limited to the following:

    i. The cost Plaintiffs paid for the phone but did not recoup from Defendants;

    ii. The lost revenue to be generated from the service plan associated with the Boost Mobile phone.

    iii. Investigation fees and costs associated with Defendants' activity.

    iv. Implementing changes and corrective measures to customer accounts and implementing additional resources for customer service to affected accounts.

86. John Does 11-20's actions have caused Plaintiffs' damages well in excess of $5,000.

87. Pursuant to 18 U.S.C. § 1030(g), Plaintiffs are therefore entitled to recover compensatory damages, injunctive and other equitable relief.

88. John Does 11-20's conduct is intentional, fraudulent, malicious and willful.

## COUNT V
### FEDERAL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114
### AGAINST JOHN DOES 1-10

89. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

90. John Does 1-10 and/or their co-conspirators aforementioned conduct constitutes use of a federally registered Boost trademark without authorization in connection with their

conspiracy to sell and offer for sale unlocked Boost Mobile phones, that do not work on the Sprint wireless network which downstream customers will discover have been altered from their original state.

91. John Does 1-10 and/or their co-conspirators use of federally registered Boost trademarks in connection with the sale of Boost Mobile phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of John Does 1-10's infringing products, and the relationship between Boost and John Does 1-10.

92. John Does 1-10 and/or their co-conspirators unauthorized use of federally registered Boost trademarks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Boost.

93. John Does 1-10 and/or their co-conspirators use of a federally registered Boost trademark in connection with the unlocked Boost Mobile phones constitutes a misappropriation of Boost's distinguishing and identifying federally registered trademark that was created as a result of significant effort and expense by Boost over a period of time. John Does 1-10 and/or their co-conspirators' use of a federally registered Boost trademark evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of John Does 1-10 have some connection, association or affiliation with Boost, and is likely to mislead the trade and public into believing that their products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Boost.

94. John Does 1-10, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Boost and its reputation and goodwill, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Boost.

15

95. Plaintiffs are without an adequate remedy at law to redress such acts, and will be irreparably damaged unless John Does 1-10 are enjoined from committing and continuing to commit such acts.

96. John Does 1-10's aforesaid acts constitute willful infringement of Boost's aforementioned federally registered trademark in violation of 15 U.S.C. §1114.

## COUNT VI
## CONTRIBUTORY TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS

97. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

98. By misappropriating the Boost Mobile phones that they knew were to be unlocked, Defendants knowingly aided and enabled distributors and/or sellers of Boost to market them to members of the general public in a way that infringes the Boost Mobile phones by placing in the hands of distributors and/or sellers an instrument of consumer deception.

99. Upon information and belief, Defendants' conduct has led to post-sale confusion by causing consumers who purchase unlocked Boost Mobile phones to believe that they are purchasing handsets with software licensed or approved by Boost.

100. Defendants' conduct constitutes contributory infringement in violation of the Trademark Act. Defendants' conduct is intentional, malicious and willful.

## COUNT VII
## DIGITAL MILLENNIUM COPYRIGHT ACT OF 1988 AGAINST JOHN DOES 11-20

101. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

102. The Boost Mobile phones contain technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a

treatment, with Boost's authority, to gain access to the proprietary software, as set forth in 17 U.S.C. § 1201.

103. The Boost Mobile phones contain technological measures that effectively control access to the proprietary software.

104. Plaintiffs did not give John Does 11-20 the authority to unlock or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the Boost Mobile phone.

105. Plaintiffs did not grant John Does 11-20 the authority to circumvent the technological measures for effectively controlling access to the Boost Mobile phone.

106. John Does 11-20 acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair a technological measure for effectively controlling access to the proprietary software without Boost's authority.

107. John Does 11-20 engaged in this misconduct for the purpose of profiting from the altered Boost Mobile phones, and not for the sole purpose of lawfully connecting to a wireless telephone communication network.

108. John Does 11-20 acted to, and/or knowingly engaged in a conspiracy designed to circumvent a technological measure that effectively controls access to the Boost Mobile phones that is protected under title 17 of the United States Code, and thereby violated 17 U.S.C. § 1201.

109. John Does 11-20's conduct has caused and, unless restrained, will continue to cause Boost severe, immediate, and irreparable injury and damages for which Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief restraining such conduct, an award of damages, including punitive damages, as well as other equitable and legal relief.

### COUNT VIII
### **UNJUST ENRICHMENT AGAINST JOHN DOES 1-20**

110. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

111. By reselling Boost Mobile phones unlocked fraudulently and without authorization, John Does 1-20 have received economic benefits acquired at Boost's expense.

112. John Does 1-20 have acquired these benefits voluntarily and with full knowledge of the benefits.

113. John Does 1-20 have retained the benefits under such circumstances that make it unjust and inequitable for John Does 1-20 to retain such benefits without paying Boost the value of the benefits John Does 1-20 acquired.

114. Accordingly, John Does 1-20 should disgorge their unjustly received gains in an amount to be determined at trial.

## COUNT IX
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

115. Plaintiffs incorporate by reference its previous allegations as if set forth fully herein.

116. An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators to unlawfully acquire, traffic, unlock, and sell altered Boost phones under the Boost trademark, which results in statutory trademark infringement, tortious interference with business expectancies, breach of contract, violations of the CFAA, violation of the Digital Millennium Copyright Act of 1988, and unjust enrichment to Defendants, among other things.

117. Each Defendant intentionally participated in the agreement and conspiracy.

118. Each Defendant knowingly agreed to engage, and did engage in one or more overt acts in pursuit of the conspiracy as stated above.

60955145.3

119. Plaintiffs have been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

120. There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' conspiracy.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

**WHEREFORE**, Plaintiffs request that the Court, after a trial by jury of its claims, enter judgment against Defendants as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special damages, as well as exemplary damages, together with pre and post-judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint; and

(d) granting such further relief as this Court deems just and proper.

Respectfully submitted,

**POLSINELLI PC**

*/s/ Michael S. Foster*

| | |
|---|---|
| Russell S. Jones, Jr. | (#26636) |
| Jay E. Heidrick | (#20770) |
| Michael S. Foster | (#24011) |

**POLSINELLI PC**
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112
(816) 753-1000
(816) 753-1536 (FAX)
rjones@polsinelli.com
jheidrick@polsinelli.com
mfoster@polsinelli.com

20